IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-HC-2181-F

| | |
|---|---|
| DERRICK LAMONT WATKINS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| JOE HERRON, Administrator, Scotland ) | |
| Correctional Institution, ) | |
| ) | |
| Respondent. ) | |

This matter arises from the petition for writ of habeas corpus (D.E. # 1), pursuant to 28 U.S.C. § 2254, filed by Derrick Lamont Watkins ("Watkins" or "petitioner"). Petitioner is a state inmate under sentence for convictions on counts of possession of a firearm by a felon, possession of ecstasy, possession with intent to sell or deliver cocaine, and being a habitual felon. Presently before the court are respondent's motion for summary judgment [D.E. # 5] and petitioner's response [D.E. # 8]. Petitioner has also filed a motion for the appointment of counsel [D.E. # 9]. For the reasons that follow, the court orders that respondent's motion for summary judgment will be granted and the petition for writ of habeas corpus will be dismissed because it is barred by the doctrine of Stone v. Powell, 428 U.S. 465 (1976).

### STATEMENT OF THE CASE

Watkins was convicted on July 13, 2009, in the Superior Court of Wake County. The North Carolina Court of Appeals gave the following account of the facts underlying petitioner's conviction:

1

> On 8 December 2008, at approximately 12:35 a.m., Deputy Jennifer Brame ("Deputy Brame") was patrolling her usual fifty-two mile area in Wake County, North Carolina when she noticed an old Volvo parked in an otherwise empty church parking lot. She previously had driven past the church parking lot at least six times during her patrol that night, and the parking lot had been empty each time. Deputy Brame does not usually see vehicles in this lot after 9:00 or 10:00 p.m. Deputy Brame had been told to check on churches and construction sites as often as possible because there had been recent reports of church break-ins, vandalism, and construction site thefts in the area. There also was the possibility that the car had broken down, or that it was a stolen vehicle that had been left in the parking lot. Deputy Brame drove closer to the vehicle and saw defendant sitting in the driver's seat and a woman in the passenger seat. As Deputy Brame was calling the "suspicious vehicle" into dispatch, defendant exited the Volvo and started to approach Deputy Brame's car. Deputy Brame told defendant to return to his car and that she would speak with him shortly. Deputy Brame knew that she had backup police nearby, and she planned to wait until they arrived to make her approach to defendant's vehicle. As defendant returned to the driver's seat, a mesh bag fell onto the ground. Defendant quickly picked up the bag with a "surprised look on his face." Deputy Brame then approached defendant, who was back in the driver's seat of the Volvo. Deputy Brame asked defendant about the mesh bag, but he had no response. She then asked defendant and the female passenger for identification. Shortly thereafter, backup police arrived and found the mesh bag containing crack cocaine on the ground outside of the passenger side. Officers also found more crack cocaine, ecstasy pills, and a handgun in the vehicle.

State v. Watkins, 205 N.C. App. 469, 698 S.E.2d 202, 2010 WL 2817049 *1 (N.C. Ct. App. July 20, 2010) (unpublished table decision). Petitioner filed a motion to suppress all evidence seized. After a hearing, the trial court denied the motion and petitioner thereafter entered a guilty plea while reserving the right to challenge the trial court's ruling on the motion to suppress. On appeal, petitioner argued "that the trial court erred by denying his motion to suppress." Id. On July 20, 2010, the Court of Appeals issued a decision in which it affirmed the trial court's denial of the motion to suppress. 2010 WL 2817049 at *4-*5. Pursuant to N.C.G.S. § 7A-30(1), petitioner appealed the Court of Appeals' decision to the North Carolina Supreme Court. The Supreme Court granted the State's motion to dismiss the appeal for lack of substantial constitutional question on November 4, 2010. State v. Watkins, 364 N.C. 605, 705 S.E.2d 339, 340 (N.C. 2010). Petitioner

did not seek certiorari review of this decision in the United States Supreme Court and did not initiate any subsequent post-conviction proceedings in the state courts. Pet. 3.

On September 6, 2011, petitioner signed and submitted his petition for habeas corpus relief. On October 11, 2011, respondents filed the instant motion for summary judgment [D.E. # 5] as well as a supporting memorandum [D.E. # 6] and several supporting exhibits. On October 24, 2011, petitioner filed his response [D.E. # 8] to the motion for summary judgment and his motion for appointment of counsel [D.E. # 9]. The matter is now ripe for ruling.

## DISCUSSION

I. Standard of Review

A. Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). A "material" fact is identified by the substantive law, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not simply rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248-49, but instead "must come forward with specific facts showing that there is a *genuine issue for trial.*" Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original and quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a court views the facts

and reasonable inferences drawn from the parties' submissions in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249-250 (citations omitted) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."); id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . .").

II. Petitioner's Claims

The petition presents the following three grounds for relief:

a. Ground I - "I was unlawfully seized within the meaning of the 4th Amendment to the U.S. Constitution on the night of my arrest."

b. Ground II - "Officer didn't have 'reasonable suspicion' to detain me, as required under the 4th Amendment to the U.S. Constitution, on the night of my arrest."

c. Ground III - "Trial court erred in the denial of my "Motion to Suppress,' which was based on the 4th Amendment to the U.S. Constitution."

Pet. 5-8. Petitioner expressly acknowledges that each of his three claims "is in conjunction with [his] 'Motion to Suppress,' which was 'denied' by the trial court." Pet. 5, 7.

III. Analysis

Respondent contends that petitioner's claims are foreclosed by the Stone doctrine and, moreover, even if they were cognizable in federal habeas corpus, they are without merit pursuant to the highly deferential standard governing a federal court's review of a state court's decisions denying a given claim. See generally Harrington v. Richter, 131 S.Ct. 770, 785-87 (2011).

In Stone, the Supreme Court addressed "whether a federal court should consider, in ruling

4

on a petition for habeas corpus relief filed by a state prisoner, a claim that evidence obtained by an unconstitutional search or seizure was introduced at his trial, when he has previously been afforded an opportunity for full and fair litigation of his claim in the state courts." 428 U.S. at 469. The Court recognized that the exclusionary rule requiring suppression of evidence unlawfully seized in violation of the Fourth Amendment is itself "prophylactic," "a judicially created means of effectuating the rights secured by the Fourth Amendment." Id. at 482. "The primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights." Id. at 486. However, the Court reasoned,

> [t]here is no reason to believe . . . that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there any reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant.

Id. at 493. Thus, "[i]n this [habeas corpus] context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." Id. at 494-95. Accordingly, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at this trial." Id. at 494.

When a habeas petitioner presents Fourth Amendment claims like petitioner's, this court should "first inquire as to whether or not the petitioner was afforded an Opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined . . . from

5

the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court." Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978). Once this court "has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case . . . unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." Id. An adequate opportunity exists where the petitioner "had an opportunity to present his Fourth Amendment claims by a motion to suppress both at the trial court level and thereafter to assign as an error, an adverse ruling thereon, on appeal." Id.

It is apparent from the record in this case that petitioner had the opportunity to present his Fourth Amendment challenges in the state court. His counsel filed a lengthy motion to suppress arguing that all evidence seized should be suppressed because petitioner was "detained without reasonable suspicion or probable cause on the date of his arrest." See Record on Appeal 14-29, Resp.'s Supp. Mem. ex. 3 [D.E. # 6-4]. The trial court conducted a hearing on the motion, which included testimony by Deputy Brame and petitioner as well as extensive argument by counsel. See 5/28/09 Transcript 1-87, Resp.'s Supp. Mem. ex. 9 [D.E. # 6-10]. Ultimately, the trial court entered a written order setting out its findings of fact and conclusions of law and denying the motion to suppress. See Record on Appeal 31-36. Petitioner appealed the trial court's adverse ruling to the North Carolina Court of Appeals. See Pet'r's App. Brief, Resp.'s Supp. Mem. ex. 4 [D.E. # 6-5]. After the Court of Appeals affirmed the trial court's ruling, petitioner further appealed to the North Carolina Supreme Court, arguing that he was entitled to an appeal as of right, pursuant to N.C.G.S. § 7A-30(1), because his case "involves a substantial question arising under the Constitution of the United States or of this State." See Pet'r's Not. of App., Resp.'s Supp. Mem. ex. 6 [D.E. # 6-7].

In spite of the record establishing the state court's thorough consideration of his Fourth Amendment claims, petitioner insists that he was denied a "full and fair opportunity" to present his Fourth Amendment claims because the "North Carolina Supreme Court 'dismissed' [his] notice of appeal." Pet'r's Response [D.E. # 8] 13. Petitioner argues this dismissal somehow denied him the opportunity "to litigate [his] claims to the highest State court." Id. He further asserts that the North Carolina Supreme Court tacitly accepted the State's argument that his case was "substantially similar" to another case in which the North Carolina Supreme Court had found reasonable suspicion to detain a defendant, see State v. Thompson, 296 N.C. 703, 707, 252 S.E.2d 776, 779 (1979), despite the fact that the Court of Appeals had recognized that some facts in his case were distinguishable from the facts in Thompson. Id. at 13-14.

Petitioner's arguments are unavailing. He was afforded a full and fair opportunity to litigate his Fourth Amendment claims by filing a motion to suppress, participating in an evidentiary hearing on the motion to suppress, and then pursuing a direct appeal of the denial of his motion to suppress through both the North Carolina Court of Appeals and the North Carolina Supreme Court. Petitioner's argument that he was denied the opportunity to litigate his claims in the State's highest court is contrary to the record because he indeed did notice an appeal to that court. More importantly, however, his argument urges this court to look beyond the opportunity afforded him and instead consider the merit of both his Fourth Amendment claims and of the North Carolina Supreme Court's determination that his appeal did not present a substantial constitutional question. In effect, therefore, petitioner argues that the North Carolina Supreme Court committed error in dismissing his appeal. However, a mere allegation of error does not suffice "to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired."

7

Doleman, 579 F.2d at 1265. See also Sneed v. Smith, 670 F.2d 1348, 1355-56 (4th Cir. 1982) ("Stone v. Powell, of course, must contemplate that a federal habeas court may make any threshold inquiry needed to satisfy itself that the full and fair opportunity to litigate in state court upon which its rule of deference is predicated has not been impaired. But the ultimate rule of deference would of course be swallowed if impairment in this sense could be shown simply by showing error–whether of fact or law–in the state court proceeding."). Moreover, the United States Court of Appeals for the Fourth Circuit has previously recognized that North Carolina's statutory scheme governing the litigation of motions to suppress, see N.C.G.S. §§ 15A-971-980, establishes "an opportunity for the full and fair litigation" of Fourth Amendment claims. Sallie v. State of North Carolina, 587 F.2d 636, 6396 (4th Cir. 1978). Thus, petitioner's claim that he was denied a full and fair opportunity to litigate his Fourth Amendment claims is without merit and this court is not required to inquire further into the merits of the Fourth Amendment claims he litigated in the state courts. Accordingly, respondent's motion to dismiss is due to be granted and the petition is due to be dismissed.

IV. Certificate of Appealability

Having determined that the petition is due to be dismissed, the court now considers whether petitioner is entitled to a certificate of appealability. A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has adjudicated and denied a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists could debate whether the issue should have been decided differently or show that the issue is adequate to deserve encouragement to proceed further. See, e.g., Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Where a petitioner's constitutional claims are dismissed on procedural grounds, a

certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484)). "Each component of the §2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 485.

After reviewing the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of the petition debatable or wrong and no issue is adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability will be denied.

## CONCLUSION

For all of the reasons stated above, it is ORDERED as follows:

a. respondents' motion for summary judgment [D.E. # 5] is GRANTED;

b. petitioner's motion for appointment of counsel [D.E. # 9] is DENIED;

c. the petition for writ of habeas corpus [D.E. # 1] is DISMISSED;

d. the Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 15th day of August, 2012.

James C. Fox
JAMES C. FOX
Senior United States District Judge

9